# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-0485V
UNPUBLISHED

| | |
|---|---|
| KIMBERLEE WINKLE, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 11, 2022 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Andrew Henning, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On April 22, 2020, Kimberlee Winkle filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by the influenza ("flu") vaccine she received on November 11, 2017. Petition at 1, ¶¶ 2, 15. The case was assigned to the Special Processing Unit of the Office of Special Masters. Although a ruling on entitlement in Petitioner's favor was issued in early June 2021, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$74,805.77**, **representing compensation in the amounts of $68,500.00 for actual pain and suffering, $3,955.13 for past lost wages, and $2,350.64 for past unreimbursed expenses.**

## I.  Relevant Procedural History

Respondent initially opposed compensation in this case, based on his belief that Petitioner had failed to establish the onset required for a Table SIRVA (within 48 hours of vaccination).[3] On June 3, 2021, I issued a ruling on entitlement, finding that the onset of Petitioner's pain occurred within 48 hours of vaccination and that Petitioner's injury otherwise met all requirements for a Table SIRVA. ECF No. 27.

On September 28, 2021, Respondent informed me that the parties had reached an impasse in their damages discussions. ECF No. 33. The parties completed their briefing on their respective damages positions on November 29, 2021. ECF Nos. 34-37. The matter is now ripe for adjudication.

## II.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] Based upon informal discussions noting a potential issue regarding onset in this case, I issued a ruling on entitlement on April 5, 2021, since withdrawn, finding that the onset of Petitioner's pain occurred within 48 hours of vaccination and that Petitioner's injury met all requirements for a Table SIRVA. *See* 42 C.F.R. § 100.3(a) XIV.B. (2017) (Table entry for SIRVA); 42 C.F.R. § 100.3(c)(10) (Qualifications and Aids to Interpretation ("QAI")). On May 4, 2021, however, I granted Respondent's motion for reconsideration and withdrew the ruling to allow Respondent time to complete the Health and Human Services ("HHS") review. ECF No. 24. When granting Respondent's motion, I ordered Respondent to file a status report or Rule 4(c) Report indicating whether he believes Petitioner's injury meets the definition for a Table SIRVA, listing any criteria he believes has not been satisfied, and providing the basis for this belief. *Id.* at 5. In late May 2021, Respondent confirmed that his sole objection to compensation was his belief that the onset of Petitioner's pain did not occur within 48 hours of vaccination. *See* Informal Remark, dated May 27, 2021.

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs*., No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs*., No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs*., 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs*., 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

III.     **Prior SIRVA Compensation Within SPU**[5]

    A.     **Data Regarding Compensation in SPU SIRVA Cases**

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2022, 2,371 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,306 of these cases, with the remaining 65 cases dismissed.

Of the compensated cases, 1,339 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 88 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[6]

1,223 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 967 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[7] Agreement |
|---|---|---|---|---|
| Total Cases | *88* | *1,223* | *28* | *967* |
| Lowest | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| 1st Quartile | $70,950.73 | $70,000.00 | $90,000.00 | $42,500.00 |
| Median | **$95,974.09** | **$90,000.00** | **$122,886.42** | **$60,390.00** |
| 3rd Quartile | $125,269.46 | $116,662.57 | $161,001.79 | $88,051.88 |
| Largest | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.   Pain and Suffering Awards in Reasoned Decisions

In the 88 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $94,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was

---

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including all medical records and affidavits filed, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case.

### A.   The Parties' Arguments

The parties agree Petitioner should be awarded $3,955.13 for her past lost wages, and $2,350.64 for past unreimbursed medical expenses. Petitioner's Brief in Support of Damages ("Brief") at 1 n.1, ECF No. 34; Respondent's Damages Brief ("Opp.") at 2 n.1; ECF No. 35. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering.

Petitioner compares the facts and circumstances in her case favorably with the experiences of the petitioners in *Hein, Binette, and Dawson-Savard,* all of whom received awards ranging from $93,000.00 to $130,000.00 for past pain and suffering.[9] Brief at 5-

---

[9] *Hein v. Sec'y of Health & Human Servs.,* No.19-1943V, 2021 WL 4805232 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $93,000.00 for actual pain and suffering); *Binette v. Sec'y of Health & Human Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (ruling determining an appropriate award

7. Additionally, the *Binette and Dawson-Savard* petitioners also received a future award, representing the net present value of yearly awards of $1,000.00 and $500.00, respectively.[10]

Petitioner asserts that her award should be greater than that awarded in *Hein* but less than those awarded in *Binette* and *Dawson-Savard.* Brief at 7. Emphasizing the *Hein* petitioner's fluctuating pain levels, gaps in treatment, and lower amount of PT, Petitioner argues that her "SIRVA, plus her related treatment and recovery, was moderately more severe than that experienced by the petitioner in *Hein.*" *Id.* at 6. Although she characterizes her SIRVA as "slightly less severe" than the injuries suffered by the *Dawson-Savard* and *Binette* petitioners, she maintains similarities exist – specifically the delay in initial treatment in *Dawson-Savard* and the treatment in *Binette. Id.* at 7. She acknowledges that her SIRVA has not been shown to be permanent and thus, she has not sought an award for *future* pain and suffering. *Id.* at 7-8.

Characterizing Petitioner's injury as comparatively minor - requiring only conservative treatment - Respondent argues that Petitioner should receive the lesser sum of $40,000.00 for her pain and suffering. Opp. at 6. He "contends that the instant case is consistent with other 'below-median awards' and that its case specific characteristics indicate the award should be near the bottom of the 'below-median' range." *Id.* at 8 (citing the description of cases warranting these lower pain and suffering awards in *Edens v. Sec'y of Health & Human Servs.*, No. 19-1110V, 2021 WL 2182720 (Fed. Cl. Spec. Mstr. Apr. 26, 2021)). The severity of Petitioner's pain and course of treatment is most comparable to that experienced by the petitioner in *Rayborn*, who received an award of $55,000.00.[11]  Opp. at 9.

Respondent also discusses Program awards generally, and the Vaccine Act's $250,000.00 cap on awards for pain and suffering. Opp. at 5-6. Stressing that proffered amounts represent "his full value assessment" (*id.* at 6), Respondent maintains that

---

to be $130,000.00 for actual pain and suffering and $1,000.00 per year for projected pain and suffering); *Dawson-Savard v. Sec'y of Health & Human Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (ruling determining an appropriate award to be $130,000.00 for actual pain and suffering and $500.00 per year for projected pain and suffering).

[10] *Binette v. Sec'y of Health & Human Servs.*, No. 16-0731V, 2019 WL 2366598 (Fed. Cl. Spec. Mstr. Apr. 2, 2019) (awarding $130,000.00 for actual pain and suffering and $41,212.94 as the net present value of the annual payments of $1,000.00 for projected pain and suffering); *Dawson-Savard v. Sec'y of Health & Human Servs.,* No. 17-1238V, 2020 WL 5522939 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $130,000.00 for actual pain and suffering and $11,009.25 as the net present value of the annual payments of $500.00 for projected pain and suffering).

[11] *Rayborn v. Sec'y Health & Human Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for actual pain and suffering).

greater awards encourage petitioners to reject his proffers, creating more work for the Court and Respondent and increasing the attorney fees to be paid by Program funds. *Id.* 6-7.

In their responsive briefs, the parties addressed the opposing party's arguments and comparable cases. Emphasizing the duration of her injury, amount of treatment - four cortisone injections and regular PT, and potential need for surgery, Petitioner argues that Respondent's characterization of her case as warranting a below-median award is inaccurate. Petitioner's Reply Brief in Support of Damages ("Reply Brief") at 1-2, ECF No. 36. She also argues that her initial five-month delay in seeking treatment was not as significant as Respondent portrays. *Id.* at 2-3. Regarding Respondent's comparison of her SIRVA to that suffered by the *Rayborn* petitioner, Petitioner insists the duration and severity of her injury were more significant. *Id.* at 3.

Likewise, Respondent disputes the comparisons advanced by Petitioner. Response to Petitioner's Memorandum Regarding Damages ("Reply Opp.") at 1-3, ECF No. 37. He argues that the pain levels experienced by the *Hein* petitioner were greater and stresses that Petitioner did not quickly report her pain or suffer the loss of a loved profession as the *Binette* petitioner. Reply Opp. at 2-3. When distinguishing the facts in *Dawson-Savard*, Respondent emphasizes the permanent nature of the *Dawson-Savard* petitioner's SIRVA. *Id.* at 3.

### B.      Analysis

The guidance provided by the *Graves* decision is clear (although not controlling),[12] and I have previously addressed the more general arguments about calculation of pain and suffering damages made by Respondent during expedited "Motions Day" hearings and in other damages decisions. I have specifically rejected Respondent's argument "that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters." *Sakovits*, 2020 WL 3729420, at *4.

### 1.      Duration and Severity of SIRVA Injury

A thorough review of the medical records reveals that Ms. Winkle suffered a mild SIRVA for approximately two years. Although she required four cortisone injections and 48 PT sessions, she suffered only moderate to mild pain levels and limited ROM throughout her injury. She consistently reported pain levels of zero or one at the beginning of her PT sessions in 2019, during the second year of her injury. By late 2019, her SIRVA

---

[12] *See supra* Section II (for further discussion).

was substantially resolved.

Another factor bearing on pain and suffering was a delay in seeking initial treatment and/or complaining of the injury. By her own admission, Petitioner did not report to treaters her left shoulder pain until at least three months post-vaccination. Exhibit 6 at ¶¶ 5-6 (Petitioner's Affidavit). Although not sufficient to counter her assertion that she suffered pain immediately upon vaccination, this delay is relevant when considering the severity of her earlier symptoms.

At her first appointment with her PCP on April 6, 2018, Petitioner reported "soreness [which] has never resolved [and] [n]ow pain with ROM." Exhibit 2 at 14. This entry suggests that her earlier pain was mild and had recently increased, particularly with movement. At her first orthopedic appointment two weeks later, Petitioner again described pain which had worsened over time. Exhibit 3 at 39. She was diagnosed with adhesive capsulitis, administered her first cortisone injection, and provided with a PT referral. *Id.* at 43.

On May 2, 2018, Petitioner attended her first PT session. Exhibit 4 at 117-21 (initial evaluation), 115-16 (daily note). The record from her initial evaluation shows she complained of "increasing soreness following her flue [sic] shot," rating her pain level as ranging between four to six and currently four. *Id.* at 118. Shortly thereafter, Petitioner consistently reporting a pain level of three prior to future PT sessions, with occasional levels ranging from four to six. *Id.* at 95-113. By late June and July 2018, these levels had reduced to between two and three. *Id.* at 89-95. Her ROM had improved significantly, especially when reaching overhead – the movement which was previously most impacted. *Id.* at 93. When discharged from PT in late July 2018, it was noted that Petitioner had cancelled four sessions and failed to appear for another three sessions. *Id.* at 87.

Although Petitioner alleges to have experienced no improvement shortly after her first cortisone injection (Exhibit 4 at 117), it appears a second injection, administered on August 20, 2018 (Exhibit 3 at 32), as well as the PT she participated in during May through July, provided some relief. When she next visited the orthopedist, more than five months later in late January 2019, she reported "relief in the anterior shoulder," but continued "pain in the deltoid muscle." Exhibit 3 at 25. Petitioner received her third cortisone injection and another PT referral. *Id.* at 28.

Petitioner showed further improvement during 34 PT sessions from mid-February through late September 2019 (Exhibit 4 at 2-86) and following her fourth cortisone injection, administered in late May 2019 (Exhibit 3 at 12). Prior to the later 17 sessions, beginning in early June 2019, she reported pain ranging from one to zero, except for one

instance when she rated her pain at a three. Exhibit 4 at 2-40. At her last PT session on September 26, 2019, it was noted that Petitioner's pain was still one of out ten and that she "can't get it past one." *Id.* at 6.

At her last orthopedic visit on October 8, 2019, it was noted that Petitioner's ROM was much improved – that she was lacking only a few degrees of terminal flexion with much better external and internal rotation. Exhibit 3 at 8. The lack of acute findings on the MRI, performed on June 13, 2019, was discussed and Petitioner's injury was characterized as left biceps tendonitis. *Id.*; Exhibit 4 at 354 (MRI results). Further conservative and surgical options were discussed, and it was noted that Petitioner would alert the orthopedist if she wished to proceed with surgery. Exhibit 3 at 8.

It appears Petitioner did not pursue further treatment, even additional conservative options. At a comprehensive preventative visit with her PCP on November 6, 2019, Petitioner failed to mention any ongoing symptoms. Exhibit 2 at 3-5. Her SIRVA injury is mentioned only once as a past injury, and the basis for her refusal of all vaccinations. *Id.* at 4.

## 2.      Comparison to Other Awards

Although I commend the parties for identifying cases involving facts and circumstances they believe are similar to those suffered by Petitioner, I do not find those cases to be comparable in the final analysis. The cases cited by Petitioner, for example, involved symptoms of greater severity and duration than those suffered by Ms. Winkle. *Hein,* 2021 WL 4805232, at *5-6; *Binette*, 2019 WL 1552620, at *13-14; *Dawson-Savard,* 2020 WL 4719291, at *2-3. Additionally, the *Hein* petitioner was seven months pregnant at the time of vaccination, and the petitioners in both *Binette* and *Dawson-Savard* provided persuasive evidence of a permanent injury. *Hein,* 2021 WL 4805232, at *5; *Binette*, 2019 WL 1552620, at *14; *Dawson-Savard,* 2020 WL 4719291, at *3.

Respondent did little better in identifying useful comparables. Although the *Rayborn* case cited by Respondent involved an initial delay in treatment and similar severity of symptoms, the duration of the *Rayborn* petitioner's injury was much less – nine months as opposed to two years. *Rayborn,* 2019 WL 1552620, at *2, 11. And the *Rayborn* petitioner required only one cortisone injection and 14 PT sessions over a period of two months. *Id.* at *2-3.

Instead, I find the facts and circumstances in Petitioner's case are similar to those experienced by the petitioners in *Hearth, Sakovits,* and*, Edens,* who received awards

ranging from $67,500.00 to $70,000.00 for past pain and suffering.[13] However, both the *Edens* and *Sakovits* petitioners suffered more severe initial pain and sought treatment within days of vaccination. *Edens,* 2021 WL 2182720, at *6.[14] Although the *Hearth* petitioner required only two cortisone injections, the *Edens* petitioner continued to consistently report pain at a level of four, despite receiving four cortisone injections. *Id.* Thus, I find Petitioner's pain and suffering amount should fall somewhere between the awards in these cases, $67,500 for *Hearth* and $70,000.00 for *Edens.*

The facts and circumstances in Petitioner's case are most like those in *Sakovits* – where a petitioner received $68,000.00. *Sakovits,* 2020 WL 3729420. The *Sakovits* petitioner also delayed seeking treatment until more than three months post-vaccination, as here, and discussed the option of surgery with her orthopedist to combat the last of her residual pain. *Id.* at *3. Although the *Sakovits* petitioner received only one cortisone injection, the lack of further injections can be attributed to the absence of relief from the first injection. Instead, the *Sakovits* petitioner's symptoms improved after she attended a similar amount of PT as Petitioner. The *Sakovits* petitioner reported higher pain levels, but the duration of her SIRVA was only eleven months. *Id.*

Thus, I find these cases analogous, and will award a slightly higher, but almost equivalent, amount to account for the longer duration of Petitioner's injury. In addition, I note that although Petitioner alleges ongoing symptoms and the potential need for surgery in the future, she has not requested an award for *future* pain and suffering in this case. Brief at 7-8. I therefore do not include such a damages component. In any event, there is insufficient evidence in the record as it currently stands to support such an award.

## V.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $68,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[15] I also find that Petitioner**

---

[13]  *Hearth v. Sec'y Health & Human Servs.*, No. 19-0589V, 2021 WL 5754962 (Fed. Cl. Spec. Mstr. Nov. 1, 2021) (awarding $67,500.00 for actual pain and suffering); *Sakovits,* 2020 WL 3729420 (awarding $68,000.00 for actual pain and suffering); *Edens,* 2021 WL 2182720 (awarding $70,000.00 for actual pain and suffering).

[14]  In *Hearth,* because the parties' disagreement was limited to the amount to be paid for Petitioner's actual pain and suffering and their proposed amounts differed by less than $20,000.00, I issued a bench ruling at the end of an expedited "Motions Day" hearing, held on October 29, 2021. *Hearth*, 2021 WL 5754962, at *1. Thereafter, I issued a cursory decision incorporating the transcript in which I set forth my ruling, but which did not set forth in any detail the basis for my determination (as discussed at the hearing). *Id.* at *1 n.3.

[15]  Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-

is entitled to $3,955.13 in actual lost wages and $2,350.64 in actual unreimbursable expenses.

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $74,805.77 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.